UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FILED**

MAR 2 4 2006

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

In re:

ALFRED KELLY CARPENTER and
JUANITA SUE CARPENTER,

    Debtors.
_____/

Case No. 6:05-bk-03334-ABB
Chapter 7

MARIE E. HENKEL, Chapter 7 Trustee,

    Plaintiff,

vs.

ALFRED KELLY CARPENTER,
CARPENTER, MOUNTJOY &
BRESSLER, P.S.C., and MOUNTJOY &
BRESSLER, LLP,

    Defendants.
_____/

Adv. Pro. No. 6:05-ap-00313-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Amended Complaint for Turnover of Property of the Estate, Objection to Discharge of Debtor and for Injunction ("Complaint")[1] and the Verified Emergency Motion for Preliminary Injunction ("Motion")[2] filed by Marie E. Henkel, the Chapter 7 Trustee herein ("Trustee"), against Alfred Kelly Carpenter, a Debtor and Defendant herein ("Debtor"), Carpenter, Mountjoy & Bressler, P.S.C., and Mountjoy & Bressler, LLP. Also before the Court is the Debtor's

---

[1] Doc. No. 12.
[2] Doc. No. 3.

Motion for Partial Summary Judgment[3] in which the Debtor seeks dismissal of the four counts (Counts II, III, IV, and V) of the Trustee's Complaint relating to 11 U.S.C. § 727(a) discharge objections.

The Trustee seeks through the Complaint (Count VI) and the Motion to permanently enjoin the Debtor's former employer from making monthly payments of $7,500.00 to the Debtor pursuant to a Deferred Compensation Agreement and to remit such payments to her. The Court issued a preliminary injunction on February 1, 2006 enjoining the former employer from making the monthly payments to the Debtor.[4] A final evidentiary hearing on the Motion and Complaint was held on March 7, 2006. The core substantive issue for determination is whether the stream of monthly payments through the Deferred Compensation Agreement constitute property of the estate pursuant to 11 U.S.C. § 541(a), or whether they are excluded from the estate pursuant to the "earnings exception" of § 541(a)(6).

After reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

The Debtor and his wife Juanita Sue Carpenter filed a joint Chapter 7 bankruptcy petition on April 1, 2005 (the "Petition Date"). The Debtor is a certified public accountant. The Trustee instituted this adversary proceeding by filing her Complaint[5] against the Debtor and the accounting firms of Carpenter, Mountjoy & Bressler, P.S.C. and Mountjoy & Bressler, LLP. The Trustee, through her Complaint and Motion, seeks a

---
[3] Doc. No. 15.
[4] Doc. No. 30.

determination that monthly payments in the amount of $7,500.00 made pursuant to an agreement between the Debtor and his former employer Carpenter, Mountjoy & Bressler, P.S.C. constitute property of the estate. The Trustee seeks to enjoin Carpenter, Mountjoy & Bressler, P.S.C. and Mountjoy & Bressler, LLP from issuing monthly payments to the Debtor and to have those payments issued directly to the Trustee.[6] She also seeks recovery of all amounts previously paid post-petition to the Debtor pursuant to the Deferred Compensation Agreement.

## Background Facts

The Debtor had been a principal and a major shareholder of the Kentucky accounting firm of Carpenter & Mountjoy, P.S.C. The Debtor and certain individuals entered into a Deferred Compensation Agreement[7] with Carpenter & Mountjoy, P.S.C. dated April 1, 1996, but became effective on *July 1, 1995*.[8] All of the individuals who executed the Agreement also executed a Shareholders Agreement dated April 1, 1996 with an effective date of July 1, 1995.[9] The Debtor was issued 72,000 shares of stock in Carpenter & Mountjoy, P.S.C. pursuant to the Shareholders Agreement. The Shareholders Agreement provides for the firm's repurchase of a withdrawing shareholder's stock. The Deferred Compensation Agreement, in essence, provides for monthly payments to be made to shareholders who leave the firm in exchange for their protection of client relationships and proprietary information.

---

[5] Doc. No. 1; Doc. No. 12 (Amended Complaint).
[6] The Trustee incorporated her request for an injunction into her Complaint and Amended Complaint.
[7] Trustee's Exhibit No. 7.
[8] *Id.* at p. 1.
[9] Trustee's Exhibit No. 8. Robert C. Shropshire is a party to the Shareholders Agreement, but not the Deferred Compensation Agreement. Otherwise, the same parties executed both documents.

The firm of Carpenter & Mountjoy, P.S.C. merged with Bressler & Company, P.S.C. in 1997 and became Carpenter, Mountjoy & Bressler, P.S.C. ("CMB").[10] CMB became responsible for fulfilling Carpenter & Mountjoy, P.S.C.'s Deferred Compensation Agreement and Shareholder Agreement obligations. The Debtor retired from CMB on December 31, 1998 or January 1, 1999[11] and sold his shares back to CMB pursuant to the terms of the Shareholders Agreement. The Debtor assigned his rights to payments for the stock pursuant to the Shareholders Agreement to U.S. Bank in October 2003 with CMB's approval.[12]

The firm further evolved in 2004. CMB, by a shareholders and directors resolution, ceased conducting business effective December 31, 2004 and sold most, if not all, of its tangible and intangible assets to the accounting firm of Mountjoy & Bressler, LLP.[13] Mountjoy & Bressler, LLP claims to owe no obligations to the Debtor.[14] CMB continues to exist and makes payment on its liabilities.[15] CMB makes the monthly payments to U.S. Bank for the Debtor's stock buy-back and the monthly payments pursuant to the Deferred Compensation Agreement.[16]

*The Deferred Compensation Agreement*

The Debtor and the other individuals who executed the Deferred Compensation Agreement are referred to as "Shareholder Employees." The Deferred Compensation Agreement sets forth one of its purposes is to "provide deferred compensation benefits to

---

[10] Trustee's Exhibit No. 18, p. 4.
[11] The evidence sets forth two different retirement dates.
[12] Trustee's Exhibit No. 11.
[13] Trustee's Exhibit No. 10. The Resolution terminates the Shareholders Agreement and the Deferred Compensation Agreement. However, such termination is not effective as to the Debtor since he was not a party to the Resolution. See Trustee's Exhibit No. 36; Transcript of January 13, 2005 deposition of Michael Mountjoy at p. 16, lines 11-22.
[14] See Trustee's Exhibit No. 18 at p. 4; Exhibit No. 1 for Carpenter, Mountjoy & Bressler, P.S.C. and Mountjoy & Bressler, LLP at lines 15-23.
[15] Trustee's Exhibit No. 36, at pp. 5-6.
[16] *Id.* at p. 6, lines 3-19 and p. 7, lines 5-18.

the Shareholder Employees . . . ."[17] The Deferred Compensation Agreement recognizes "the Shareholder Employees have rendered the Corporation valuable service, and it is the desire of the Corporation to have the benefit of their continued service, loyalty and counsel, and also to assist them in providing for the contingencies of retirement, death, disability or other termination of employment with the Corporation."[18] A Shareholder Employee, or his or her estate, becomes entitled to payments pursuant to the Deferred Compensation Agreement upon his or her "mandatory retirement at age 65, early retirement at age 55, disability . . . death, or termination of employment. . . ."[19] Upon one of these events a Shareholder Employee becomes a "Withdrawing Shareholder Employee."[20]

The Deferred Compensation Agreement sets forth various conditions for receipt of payments by Withdrawing Shareholder Employees. A Withdrawing Shareholder Employee ". . . must exercise his or her reasonable best efforts to assist the Corporation in retaining those clients for which the Withdrawing Shareholder Employee had responsibility during his or her employment with the Corporation."[21] The Deferred Compensation Agreement contains confidentiality and non-competition clauses and requires payment of fees to CMB should a Withdrawing Shareholder Employee perform public accounting services for one of the company's clients.[22] The Deferred Compensation Agreement does not require a Withdrawing Shareholder Employee to continue to provide professional services for the benefit CMB. The Deferred

---

[17] Trustee's Exhibit No. 7 at ¶1.
[18] *Id.* at p. 1.
[19] Trustee's Exhibit No. 7 at ¶1(A).
[20] *Id.*
[21] *Id.* at ¶1(I) p. 5.
[22] *Id.* at ¶¶3, 4(C), and 4(A).

Compensation Agreement constitutes an executory contract since the parties on each side of it have obligations.

The Debtor became a Withdrawing Shareholder Employee upon his retirement from CMB on December 31, 1998 or January 1, 1999. He is entitled to receive monthly payments of $7,500.00 for ten years so long as he faithfully performs the obligations of the Deferred Compensation Agreement.[23] The Debtor and his former business partner Michael Mountjoy receive the largest payments pursuant to the Deferred Compensation Agreement because they were the two largest shareholders, each holding 72,000 shares. The Debtor has been receiving monthly payments of $7,500 pursuant to the Deferred Compensation Agreement both pre-petition and post-petition. The Debtor had received seventy-five monthly payments by the Petition Date and has received nine post-petition payments, including the December 2005 payment. The post-petition payments received by the Debtor total $67,500.00. Approximately thirty-six payments remain pursuant to the Deferred Compensation Agreement. CMB is holding the January, February, and March 2006 payments.

## *The Parties' Contentions*

The Trustee contends the Deferred Compensation Agreement post-petition monthly payments constitute property of the estate and should be paid to the Trustee for distribution to the Debtor's creditors.[24] The Debtor alleges in response: The Deferred Compensation Agreement constitutes a personal services contract; the stream of monthly payments constitute earnings for services; and such payments are not property of the estate. The Debtor has not asserted a claim of exemption in his Schedule C for the post-

---

[23] Trustee's Exhibit No. 7 at ¶1(F) p. 3.

petition payments on the basis that post-petition earnings are excluded from property of the estate and, as a result, no exemption claim is required.[25]

CMB and Mountjoy & Bressler, LLP seek a determination regarding who is entitled to the Deferred Compensation Agreement payments.

*Analysis of the Deferred Compensation Agreement*

The language of the Deferred Compensation Agreement is clear and unambiguous. The plain language of the document is controlling and defines what it is, its purpose, and how it operates. The Deferred Compensation Agreement's purpose is to protect the company's proprietary information, protect its client base, and prevent a Withdrawing Shareholder Employee from competing with the company. It also operates to reward Withdrawing Shareholder Employees for their years of service and loyalty, and to provide financial assistance to them in the event of retirement, death, disability or other termination of employment. The Deferred Compensation Agreement does not require a Withdrawing Shareholder Employee to continue to provide professional services for the benefit of the company. The monthly payments commence only when a Shareholder Employee leaves the company, whether it be voluntarily (retirement) or involuntarily (death, disability, termination). The payments continue even if a former employee dies or becomes disabled.

The Deferred Compensation Agreement, by its very terms, is not an employment agreement nor is it a deferred compensation agreement. Its name is a misnomer.[26] It does not pay former employees for unpaid wages that are owing to the employees. The

---

[24] The Trustee seeks injunctive relief in Count VI regarding both the Deferred Compensation Agreement and the Shareholders Agreement. Due to the Debtor's assignment of his rights to payment pursuant to the Shareholders Agreement to U.S. Bank, no relief can be granted to the Trustee as to the Shareholder Agreement payments.
[25] Trustee's Exhibit Nos. 2, 6.

Deferred Compensation Agreement is not a professional services contract. It does not call for professional services to be rendered once a Shareholder Employee's employment ceases.

The Debtor's employment with CMB terminated at the end of 1998 or the beginning of 1999. The Deferred Compensation Agreement provides monthly payments to former employees for their goodwill and loyalty in exchange for their protection of CMB's proprietary information and client base after leaving the employ of the company. The Debtor's goodwill—his relationship of trust and loyalty with firm clients—resulted in a significant amount of business for the firm. The Deferred Compensation Agreement calls for the Debtor to exercise his "best efforts" in encouraging his clients to stay with the firm. The Debtor's best efforts are intended to substitute CMB (and now Mountjoy & Bressler, LLP) for himself in the relationship of goodwill he had with the clients. The purpose of the Deferred Compensation Agreement's covenant to not complete is to ensure the transfer of the Debtor's goodwill to the firm would not be illusory.

The monthly payments of $7,500 do not constitute earnings for services pursuant to the plain language of the Deferred Compensation Agreement. Testimony or other parole evidence regarding the purpose and meaning of the Deferred Compensation Agreement is unnecessary since the document is clear and unambiguous. The testimony presented, however, further establishes the Deferred Compensation Agreement payments are not earnings for services. Mr. Michael Mountjoy, a former founder and substantial shareholder of CMB, explained the Deferred Compensation Agreement was created to pay shareholders who left the firm for assistance with the firm's retention of clients, to

---

[6] This point was admitted at trial by Mr. Gerald J. Plappert, Jr., a former shareholder of CMB and a consultant for Mountjoy & Bressler, LLP.

keep them from competing with the firm, and protect proprietary firm information.[27] He testified the Debtor does not continue "to provide any services for clients or the firm, and he didn't pay for any when he left to do that."[28] The Debtor's testimony establishes he does not provide services for clients in carrying out his Deferred Compensation Agreement obligations. His activities in conjunction with the Deferred Compensation Agreement consist of assisting Mountjoy & Bressler, LLP with the retention of clients he had brought to the firm or had established relationships with, protecting proprietary firm information, and not competing with the firm.

The monthly payments arising pursuant to the Deferred Compensation Agreement constitute property of the bankruptcy estate. The issuance of a permanent injunction against CMB and Mountjoy & Bressler, LLP enjoining the firms from transferring any of the monthly Deferred Compensation Agreement payments to anyone other than the Trustee and from interfering with the Deferred Compensation Agreement payments in any way is appropriate to preserve and recover assets of the estate. An injunction is the only adequate remedy. The bankruptcy estate would suffer irreparable injury without the protection of a permanent injunction. The benefit of an injunction to the estate outweighs any damage it may cause the Defendants. The Defendants argue they will suffer damages. They will suffer no real damages as a result of the issuance of a permanent injunction. The public interest is served by the issuance of a permanent injunction because an injunction results in the preservation and recovery of a substantial bankruptcy estate asset.

---

[27] Trustee's Exhibit No. 36 at p. 11, lines 1-9.
[28] *Id.* at p. 19, lines 4-7. The Shareholders Agreement requires a former employee who provides services to a client who was a client of the firm at the time of the employee's termination to pay fees to the firm. Trustee's Exhibit No. 8 at ¶ 10.

## CONCLUSIONS OF LAW

The Trustee contends the payments made pursuant to the Deferred Compensation Agreement post-petition constitute property of the estate pursuant to 11 U.S.C. § 541(a)(1). The Debtor contends the payments constitute earned income for services and the payments are not property of the estate pursuant to 11 U.S.C. § 541(a)(6).

### *Post-petition Payments*

Property of the estate includes "all legal and equitable interests in the debtor in property as of the commencement of the case wherever located and by whomever held." 11 U.S.C. § 541(a)(1) (2005). Property of the estate is defined broadly, but some interests are specifically excluded. Section 541(a)(6) excludes post-petition earnings from property of the estate. "Proceeds, product, offspring, rents, or profits of or from Property of the estate, except such as are *earnings from services* performed by a individual debtor after the commencement of the case" constitute property of the estate. 11 U.S.C. § 541(a)(6) (2005) (emphasis added). The purpose of § 541(a)(6) is to enable "a debtor to make a fresh start, not shield his pre-bankruptcy assets from his creditors." In re McDaniel, 141 B.R. 438, 440 (Bankr. N.D. Fla. 1992). A Chapter 7 debtor does not need to claim postpetition earnings as exempt since such earnings are specifically excluded from the estate. In re Bemish, 200 B.R. 408, 409 (Bankr. M.D. Fla. 1995) (citing In re Gorski, 85 B.R. 155, 156 (Bankr. M.D. Fla. 1988)).

The cornerstone issue regarding the post-petition Deferred Compensation Agreement payments is whether the payments constitute "earnings from services." The phrase "earnings from services" is not defined in the Bankruptcy Code. The language of § 541(a)(6) is plain and unambiguous. Where statutory language is plain and

unambiguous "'. . . the sole function of the courts is to enforce it according to its terms'. . . .The plain meaning of legislation should be conclusive." United States v. Ron Pair Enter.. 489 U.S. 235, 241-42, 109 S. Ct. 1026, 103 L.Ed.2d 290 (1989).

The Deferred Compensation Agreement does not obligate the Debtor to perform post-termination professional services. It obligates the Debtor to refrain from action if the Debtor is to be entitled to monthly payments. The Debtor cannot disclose proprietary information. He must not compete with the firm and must, using his best efforts, protect firm-client relationships. Carrying out these obligations does not constitute performing "services" and the payments that flow to the Debtor do not constitute "earnings from services." The exclusion of § 541(a)(6) is inapplicable.

Post-petition payments constitute property of the estate when those payments are "sufficiently rooted in the prebankruptcy past." Segal v. Rochelle, 382 U.S. 375, 380, 86 S. Ct. 511, 15 L.E.2d 428 (1996). The Deferred Compensation Agreement's post-petition payments are sufficiently rooted in the Debtor's prebankruptcy past. The payments arise from an agreement negotiated and executed by the Debtor and his former employer, and others, pre-petition. The Deferred Compensation Agreement provides payment in recognition of an employee's loyalty during past employment and to prevent competition going forward. The Deferred Compensation Agreement, at its core, is a noncompete agreement designed to protect relationships built in the Debtor's past. It is not a personal services contract for services provided post-termination.

Post-petition payments to a Chapter 7 debtor pursuant to a prebankruptcy noncompete agreement do not constitute earnings from services performed postpetition. In re Andrews, 80 F.3d 906, 912 (4th Cir. 1996); In re Johnson, 178 B.R. 216, 220 (9th

Cir. BAP 1995); In re Alstad, 265 B.R. 488, 491 (Bankr. M.D. Fla. 2001); In re McDaniel, 141 B.R. at 440; *see also* In re Prince, 85 F.3d 314, 324 (7th Cir. 1996) (holding that payments for goodwill do not constitute earnings for services and are not excluded from the estate by § 541(a)(6)). The post-petition payments totaling $67,500 received by the Debtor pursuant to the Deferred Compensation Agreement constitute property of the estate pursuant to § 541(a)(1) and must be turned over to the Trustee pursuant to 11 U.S.C. § 542(a).

## *11 U.S.C. § 105*

Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (2005). A bankruptcy court, through § 105, may impose an injunction when appropriate. The Court, pursuant to § 105, entered a preliminary injunction against CMB and Mountjoy & Bressler, LLP. The Defendants did not appeal the preliminary injunction. The Trustee seeks a permanent injunction and the Defendants oppose such relief.

Whether to continue or dissolve a preliminary injunction is within the sound discretion of the court that issued the injunction. In re Lickman, 286 B.R. 821, 827-8 (Bankr. M.D. Fla. 2002). A party seeking the issuance of a preliminary injunction must establish four elements: (i) substantial likelihood of the movant's success on the merits; (ii) irreparable injury will be suffered by the movant unless the injunction issues; (iii) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (iv) if issued, the injunction would not be adverse to the public interest. Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000); McDonald's

Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). The standard for a permanent injunction is essentially the same. The moving party must show *actual* success on the merits for a permanent injunction. Siegel v. Lepore, 234 F.3d at 1213. The moving party must also demonstrate "continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law." *Id.* (quoting Newman v. State of Ala., 683 F.2d 1312, 1319 (11th Cir. 1982).[29]

The imposition of a permanent injunction against CMB and Mountjoy & Bressler, LLP enjoining these firms from making any monthly payments to the Debtor and directing such payments to the Trustee, and from taking any action to interfere with the payment stream, is appropriate. The Trustee has established the elements for a permanent injunction.

(i) Actual success on the merits: The Trustee has prevailed on the merits of this action. She has established the Deferred Compensation Agreement payments constitute property of the estate pursuant to § 541(a)(1) and are subject to administration for the benefit of the Debtor's creditors.

(ii) Irreparable injury: Irreparable injury in the context of bankruptcy "refers to either irreparable harm to the interest of a creditor or irreparable harm to the bankruptcy estate. Of these two, irreparable harm to the bankruptcy estate . . . is clearly of greatest relevance to the court." In re Lickman, 286 B.R. at 829 (quoting Dore & Assoc. Contracting, Inc. v. American Druggists' Ins. Co., 54 B.R. 353, 357 (Bankr. W.D. Wis. 1985)). The bankruptcy estate will suffer on-going irreparable injury unless a permanent

---

[29] "The irreparable injury rubric is intended to describe the quality or severity of the harm necessary to trigger equitable intervention. In contrast, the inadequate remedy test looks to the possibilities of alternative modes of relief, however serious the injury." Lewis v. S.S. Baune, 534 F.2d 1115, 1124 (5th Cir. 1976).

injunction issues. Without an injunction the monthly payments will not be paid to the Trustee for the benefit of the creditors.

(iii) Balance of harm: This element requires a court to balance the relative harm as between the movant and the party opposing the injunction. In re Lickman, 286 B.R. at 830-31. The benefit an injunction brings to the Debtor's estate and its creditors far outweighs any damage the injunction may cause the Defendants. The Debtor is not entitled to the payments because they constitute property of the estate, so he would be improperly enriched if payments continue to flow to him. CMB and/or Mountjoy & Bressler, LLP are obligated to make the payments pursuant to the Deferred Compensation Agreement. They are obligated to turnover the payments to the Trustee pursuant to § 542(a) of the Bankruptcy Code. CMB and Mountjoy & Bressler, LLP cannot be harmed by an injunction that requires them to fulfill their contractual payment and statutory turnover obligations.

(iv) Public policy: This element requires a balancing of the public interest with other competing social interests. Issuance of a permanent injunction is beneficial and important to the public interest because it results in the recovery of a bankruptcy estate asset.

(v) Inadequate remedy: No alternative modes of relief exist to address the injury presented in this case. Monetary remedies at law would not address future payment obligations that come due pursuant to the Deferred Compensation Agreement. An injunction is necessary to ensure the parties do not disrupt or alter the Deferred Compensation Agreement. Injunctive relief is the only adequate remedy that protects the payments and assures the estate receives the funds.

*Debtor's Motion for Partial Summary Judgment*

The Debtor seeks dismissal of Counts II, III, IV, and V of the Trustee's Complaint on the basis the Trustee's objections to the Debtor's discharge pursuant to 11 U.S.C. § 727(a) were untimely filed. The Trustee's discharge objections were not timely filed and these counts are due to be dismissed.

*Conclusion*

The post-petition payments due to the Debtor through the Deferred Compensation Agreement are not "earnings from services performed by an individual debtor after the commencement of the case" and are not protected by § 541(a)(6). Any payments received by the Debtor pursuant to the Deferred Compensation Agreement post-petition constitute property of the bankruptcy estate pursuant to § 541(a)(1). Any payments due to be made to the Debtor pursuant to the Deferred Compensation Agreement post-petition constitute property of the bankruptcy estate pursuant to § 541(a)(1).

The $67,500.00 received by the Debtor post-petition pursuant to the Deferred Compensation Agreement constitutes property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). The Trustee is entitled to turnover of said funds pursuant to 11 U.S.C. § 542(a). The Defendant CMB is holding post-petition payments totaling $22,500.00 (January, February, and March 2006 payments). Such funds constitute property of the bankruptcy estate pursuant to § 541(a)(1) and the Trustee is entitled to turnover of said funds pursuant to § 542(a). All future payments due pursuant to the Deferred Compensation Agreement must be paid by CMB and/or Mountjoy & Bressler, LLP directly to the Trustee. A permanent injunction shall issue enjoining CMB and Mountjoy & Bressler, LLP from encumbering the Deferred Compensation Agreement

payments in any manner and from transferring, conveying, or assigning the Deferred Compensation Agreement.

Judgment shall be entered in favor of the Trustee on Counts I and VI and Counts II, III, IV and V shall be dismissed. The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

Dated this 24th day of March, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge